(April 5, 1984)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROY DANIEL TUCKER, Appellant. — Appeal from a judgment of the County Court of Albany County (Harris, J.), rendered October 9, 1981, upon a verdict convicting defendant of the crime of murder in the second degree. ¶ During the afternoon of March 25, 1981, Dawn Colello was stabbed and cut over 100 times and strangled to death in her third floor apartment at 56 Spring Street in the City of Albany. The body was discovered by Richard Treadway and Paul Writer at approximately 4:00 P.M. that day. The police were immediately contacted and approximately one hour later Treadway and Writer were questioned by the police. ¶ Upon his reporting for duty the next morning, Detective John Tanchak was assigned to the case. After reading two sworn statements, he began a search for defendant with the purpose of apprehending him. Although he was acquainted with defendant, it took an appreciable length of time to find him in spite of the fact that all on-duty officers of the city had been alerted. It was only after hearing a police radio report from another squad car that the

detective was able to zero in on an apartment house which was not defendant's residence. Based upon information of an observer that it was likely that defendant was on the roof of the building, the detective and other police officers began a complete search of the building beginning on the top floor. Defendant was observed at the top of a stairwell leading from the top floor to the roof. ¶ Detective Tanchak immediately arrested defendant without a warrant, placed him in handcuffs and took him back to the police station. En route, he was advised of his *Miranda* rights, which he waived. At the police station, a conversation ensued in which, among other things, the detective told defendant that statements of other individuals placed him inside the victim's apartment house and coming down its fire escape to the rear of the house on the afternoon the victim died. During this conversation, defendant orally confessed to the murder and, after again being advised of his *Miranda* rights, signed a written confession. During the nearly two-hour period at the police station before the written statement was signed, the police seized defendant's jacket and sneakers after having observed dried blood on them. ¶ A major issue on this appeal is whether the suppression court was justified in refusing to suppress the written confession as well as the blood-stained jacket and sneakers. Defendant relies upon *People v Bouton* (50 NY2d 130), contending that his warrantless arrest was unlawful for want of probable cause and, because of that fact, any evidence obtained after that arrest should have been suppressed. ¶ Summarizing the testimony of the arresting officer at the suppression hearing as well as reasonable inferences to be derived therefrom, it is evident that when the arrest was made, Detective Tanchak was aware that Dawn Colello was a homicide victim, that witnesses placed defendant at the scene of the crime, that defendant was observed exiting the building by way of a back fire escape, that the arresting officer was personally acquainted with defendant, and that defendant had fled to avoid arrest. In light of the above evidence, we find that the suppression court was completely justified in refusing to suppress. The totality of the evidence before the arresting officer would have lead a prudent person to the belief that a probability existed that defendant had committed the crime (*Henry v United States,* 361 US 98). We note, however, that the evidence would have been stronger had the prosecuting attorney introduced the two sworn statements previously mentioned. ¶ Defendant further argues that his confession was the product of coercive police tactics and therefore involuntary and inadmissible under CPL 60.45 (subd 2, par [a]), and thus should have been suppressed. The People have the burden of proving beyond a reasonable doubt that a confession was voluntary (*People v McGregor,* 84 AD2d 610, 611). At the suppression hearing, the only testimony introduced was that of the arresting officer who testified that defendant was read his *Miranda* rights twice, that he waived those rights and that he confessed in an atmosphere free of coercive influences. Defendant introduced no contradictory evidence at the hearing. Thus, the issue of voluntariness was reduced to one of credibility respecting the arresting officer's testimony, and it was within the suppression court's prerogative to believe or disbelieve such testimony. Since there is nothing in the record to show the suppression court's belief of such testimony was unjustified, its finding that defendant's statements were voluntarily given must be upheld. The People met their burden of proof, and the suppression motion was properly denied (see *People v Prochilo,* 41 NY2d 759, 761; *People v Broome,* 78 AD2d 718; *People v O'Brien,* 48 AD2d 446, 448). ¶ Defendant's trial testimony, if believed, could support his contention of coercion. That the jury did not believe such testimony must be presumed because the prosecution prevailed at trial (see *People v McNeeley,* 77 AD2d 205, 212). In any event, such testimony did not require withdrawal of the confession from the jury's consideration, but only that the jury be in-

structed to disregard the confession if they found that it was involuntarily made (CPL 710.70, subd 3). Such instructions were given by the trial court. ¶ Defendant also contends that the People failed to prove his guilt beyond a reasonable doubt, pointing to various inconsistencies in the evidence. Inconsistencies in evidence introduced at trials appear to be the rule rather than the exception. It is most unusual at a fact-finding trial that two or more witnesses observing a particular event describe the event in the same manner. It is the jury's function to believe or disbelieve alternate versions of a witness' testimony (see *People v De Tore,* 34 NY2d 199, 207, cert den *sub nom. Wedra v New York,* 419 US 1025) and to resolve discrepancies in the testimony in accordance with its assessment of credibility (see *People v Jesmer,* 53 AD2d 795); it can accept part and reject part of either the prosecution's or defense's evidence (cf. *People v Asan,* 22 NY2d 526, 530). From all the evidence introduced at the trial, the jury was warranted in finding defendant guilty beyond a reasonable doubt. ¶ Defendant's remaining contentions have been examined and found to be without merit. The judgment of conviction should therefore be affirmed. ¶ Judgment affirmed. Kane, J. P., Main, Yesawich, Jr., Weiss and Harvey, JJ., concur.