OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be reversed and a new trial ordered.
At defendant’s murder trial, the People introduced evidence that the victim, Gloria Blocken, had died in the early morning of November 21, 1979 as a result of decapitation and evisceration. Her headless torso was found wrapped in rags in the bathtub of her apartment, and a fire had been set in a nearby closet. Her head was found in a pillowcase in an adjacent backyard. A medical examiner testified that at the time of her death, Blocken’s blood alcohol level was .25%.
One month later, Detective Martin Mak interviewed defendant, who admitted that he had killed Blocken. According to Mak’s testimony at trial, defendant said that he thought he was a homosexual because he had difficulty having sexual relations with women, and his friend advised him "that if anybody can get you an erection, it would be Gloria Blocken.” Defendant and his friend went to Blocken’s apartment but left *889 after a time, and defendant later returned there alone and attempted to have sexual intercourse with her. When he was unable to do so, she began laughing at him. Although he asked her to stop, she refused. He then slashed her across the chest with his knife. "She fell, and * * * [defendant] said he went over and cut her head off. He said: I just went crazy and cut her head off. And then he said: I kept slashing and slashing and slashing.” After Detective Mak placed him under arrest, defendant said, "I need help. I would like to have some help.”
Later the same day, defendant gave a statement to an Assistant District Attorney, which was transcribed and read into the record at trial. Defendant told him that, after drinking, he attempted to have sexual intercourse with the victim. When he was unable to do so, she started poking at him, saying "go on little boy. I don’t need you.” Defendant "got mad,” cut her on the breast and throat, and then started cutting her up. After decapitating her, he moved her body to the bathtub, set a fire in a closet next to the bathroom, and left the apartment by a fire escape carrying her head. He threw the head into a nearby backyard and went home. When asked whether he had ever been impotent before, defendant responded, "When I’m drinking.” However, according to defendant, no woman had ever laughed at him as Blocken had. "[S]eems like something snapped inside me, you know, bananas.”
After both sides rested, defendant asked the court to charge extreme emotional disturbance (Penal Law § 125.25 [1] [a]) and intoxication (Penal Law § 15.25), but both requests were rejected on the ground that the evidence introduced was insufficient to justify submission of those issues to the jury. The Appellate Division affirmed defendant’s conviction of second degree murder. The only issue before us is whether there was sufficient evidence to warrant submission of the defense of extreme emotional disturbance to the jury for its determination.
Where the issue on appeal is whether a particular defense should have been charged to the jury, the evidence is viewed in the light most favorable to the defendant (People v Farnsworth, 65 NY2d 734). For the defendant to be entitled to a charge on extreme emotional disturbance, sufficient evidence must be presented for the jury to find by a preponderance of the evidence that the elements of the affirmative defense are satisfied (People v Walker, 64 NY2d 741; see also, People v *890 Cable, 96 AD2d 251, 260-261, revd on other grounds 63 NY2d 270, 282). The defense requires proof of both a subjective element (that defendant did in fact act under the influence of extreme emotional disturbance) and an objective element (that there was reasonable explanation or excuse for the emotional disturbance). The determination whether there was reasonable excuse or explanation for the disturbance must be made by viewing "the subjective, internal situation in which the defendant found himself and the external circumstances as he perceived them at the time, however inaccurate that perception may have been, and assessing from that standpoint whether the explanation or excuse for his emotional disturbance was reasonable”. (People v Casassa, 49 NY2d 668, 679; see also, ALI Model Penal Code § 210.3.) Psychiatric evidence is not necessary to establish the defense (see, Matter of Lee v County Ct., 27 NY2d 432, 442).
Defendant’s savage acts of mutilating and decapitating his victim, coupled with his statements to the police and District Attorney that "something snapped” inside him when she mocked and taunted him, that he went "bananas” and he needed help, were evidence of a loss of self-control associated with the defense of extreme emotional disturbance (see, People v Walker, 64 NY2d 741, 743, supra). Furthermore, there was sufficient evidence for submission to the jury — which a rational jury might have accepted or rejected — of an explanation or excuse for defendant’s emotional state, in his recounting of the victim’s continued ridicule and taunting about his impotence.* In these circumstances, defendant’s request for the charge of extreme emotional disturbance should have been granted so that the jury might weigh the evidence presented as to both the subjective and objective elements of the defense, and the failure to do so requires a new trial.
In view of our decision ordering a new trial, we need not reach defendant’s contention that on the evidence presented at his first trial he was entitled to a jury instruction on intoxication.

 In determining whether to submit the affirmative defense of extreme emotional disturbance to the jury, it is for the court initially to decide if there is sufficient credible evidence for the jury to determine that, by a preponderance of the evidence, the elements of the defense are established. Here this threshold requirement was met. It is then for the jury to resolve inconsistencies in testimony and reach conclusions as to the "volitional, deliberate and calculated” nature of defendant’s acts (dissent, at p 892, n 2).