**Carmelo GARCIA, Petitioner,**

v.

**Robert KUHLMANN, Superintendent, Sullivan Correctional Facility, et al., Respondents.**

94 Civ. 8394 (HB).

United States District Court, S.D. New York.

July 21, 1995.

Carmelo Garcia, Fallsburg, NY, pro se.

Robert T. Johnson, District Attorney, Bronx County, Bronx, NY by Mark Brisman, for respondents.

## MEMORANDUM AND ORDER

BAER,[1] District Judge.

Carmelo Garcia, currently incarcerated at the Sullivan Correctional Facility, brings this petition for writ of habeas corpus. Petitioner was convicted after a jury trial in New York Supreme Court, Bronx County, of two counts of Murder in the Second Degree, N.Y. Penal Law § 125.25, and sentenced to concurrent indeterminate terms of imprisonment of from 25 years to life. The Appellate Division, First Department, affirmed Garcia's conviction without opinion, 94 A.D.2d 983, 462 N.Y.S.2d 522 (1st Dep't 1983). Petitioner's request for leave to appeal was then denied by the Court of Appeals in June 1983. 59 N.Y.2d 973, 466 N.Y.S.2d 1033, 453 N.E.2d 557 (1983).

Petitioner brings this habeas petition on the grounds that (1) he was denied effective assistance of counsel, (2) the state trial court committed reversible error by denying his mid-trial request for a *Wade* hearing, (3) the State withheld *Brady* material, and (4) the court below failed to charge manslaughter in the first degree. Respondents argue that Petitioner's claims are either unexhausted or do not implicate federal constitutional rights. For the reasons stated below, Garcia's petition for writ of habeas corpus is DISMISSED.

## I. BACKGROUND

The incident giving rise to Petitioner's murder convictions began as a dispute about an abandoned refrigerator. One of the victims, Wilfredo Delgado, objected to Petitioner taking the refrigerator. Petitioner then shot and killed Delgado and Vernon Harris, a passer-by.

## II. DISCUSSION

### A. *Ineffective Assistance of Counsel*

■ Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Petitioner has a very heavy burden in demonstrating ineffective assistance of counsel. He must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) reasonable probability that **but for** counsel's errors, the outcome would have been different. There is a presumption that counsel performed adequately. Mere disagreement with counsel's trial strategy does not rebut that presumption.

■ Here, Petitioner's complaints about counsel's performance center on trial strategy. Petitioner claims that counsel failed to explore certain issues on cross-examination. For example, counsel did not attempt to impeach Andrew Harris, brother of one of the murder victims, on alleged inconsistencies in his testimony concerning the direction of the shots fired and that fact that Harris had been convicted of sexual abuse. The choice of how to conduct cross-examination is a matter of trial strategy, which will not be reviewed by the Court unless counsel failed even to put on a defense, or to perform other basic elements of trial advocacy.

### B. *Court's Refusal to Grant a Mid–Trial* Wade *Hearing*

■ Petitioner's trial counsel made a mid-trial motion for a *Wade* hearing, which the court denied. The basis for the motion was the use of a photo array for identification purposes that Petitioner claims was unduly suggestive. Federal constitutional law does not give defendant a *per se* right to pretrial or mid-trial hearings. *Watkins v. Sowders*, 449 U.S. 341, 349, 101 S.Ct. 654, 659, 66 L.Ed.2d 549 (1981); *Brown v. Harris*, 666 F.2d 782, 785 (2d Cir.1981), *cert. denied*, 456 U.S. 948, 102 S.Ct. 2017, 72 L.Ed.2d 472 (1982). Federal constitutional law does not

1. Carole Gottesman, a second-year student at New York Law School, assisted in the research and preparation of this Memorandum.

warrant granting a habeas petition on the basis of denial of a pretrial hearing where Petitioner had the opportunity to cross-examine the witness on the identification issue and to argue in summation that there might have been a problem with the identification procedure. Here, the identifying witness did identify defendant at trial.

■ Case law construing New York Criminal Procedure Law Section 710.20 has allowed suppression of a witness's in-court identification under certain conditions relating to the degree of taint of the photo array, depending upon whether or not the witness had an independent basis for the identification. The issue of the denial of the *Wade* hearing was briefed for the appeal to the Appellate Division, First Department, and Petitioner's conviction was affirmed. Insofar as this is a matter of state law, the general rule is that it is not reviewable on a habeas petition. "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) (citations omitted). While under certain conditions, an identification procedure may be *so* impermissibly suggestive as to implicate federal due process rights, there must exist a very substantial likelihood of misidentification. *Manson v. Brathwaite*, 432 U.S. 98, 107, 97 S.Ct. 2243, 2249, 53 L.Ed.2d 140 (1977); *Jarrett v. Headley*, 802 F.2d 34, 40–41 (2d Cir.1986).

The factors involved in determining whether the identification rose to this level of impermissibility include opportunity of witness to view the criminal at the time of the crime, witness's prior description of the criminal, level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). Applied to Petitioner's case, it does not appear that Petitioner can demonstrate that the in-court identification was so tainted by the photo array procedure as to warrant granting of the habeas petition. The witness in question observed the crime under adequate lighting. On these facts, even under the stricter New York State standard, *New York v. Adams*, 53 N.Y.2d 241, 252, 440 N.Y.S.2d 902, 423 N.E.2d 379 (N.Y.1981), the in-court identification would be admissible. *See People v. Hyatt*, 162 A.D.2d 713, 557 N.Y.S.2d 415 (2d Dep't 1990) (holding that in-court identification by complaining witness, who had unobstructed view of defendant under good lighting at time of burglary and whose description of defendant was sufficiently specific as to establish her ability to observe perpetrator at time of crime was properly admitted notwithstanding existence of unduly suggestive pretrial identification).

### C. *Petitioner's Brady Claim*

■ Petitioner claims a *Brady* violation on the basis of the State's failure to turn over to defendant statements made by Anna Oqui (spelled "Ogui" in Respondents' papers) at the grand jury hearing. To establish a *Brady* claim, Petitioner must show that the government failed to disclose exculpatory material to the defense. There is no *Brady* violation if the defendant "knew or should have known the essential facts permitting him to take advantage of any exculpatory evidence." *United States v. Gaggi*, 811 F.2d 47, 59 (2d Cir.) (citations omitted), *cert. denied*, 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987). With respect to disclosure of grand jury testimony, the government has no duty to turn over grand jury testimony where the defendant knows the identity of the witness, knows that the witness might have testified before the grand jury, and knows that the witness's statements might have supported the defense. *United States v. LeRoy*, 687 F.2d 610, 618 (2d Cir.1982), *cert. denied*, 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983). Because Oqui did not testify at trial, New York State Criminal Procedure law requiring the disclosure of a trial witness's grand jury testimony was not violated.

Here, Petitioner was aware that Oqui testified at the grand jury. More importantly, Oqui's testimony was not exculpatory. Oqui testified that she observed Petitioner in a heated discussion with Wilfredo Delgado at

the time of the shooting. However, she also testified that she saw Delgado's brother, Hector, drop a bat while Petitioner was chasing him. Petitioner claims that Oqui's testimony would have supported his contention that the jury should have been instructed on the justification of self-defense and/or on the lesser included offense of first degree manslaughter. As indicated in the next section, however, Oqui's testimony would not have enabled the court to give the charges Petitioner wanted.

### D. Petitioner's Claim on Jury Instruction

 Petitioner claims that the jury should have been instructed on both the justification of self-defense and the lesser included offense of manslaughter, first degree. Trial counsel did not request an instruction on justification. Because jury instructions are a matter of state law, *Alvarez v. Scully,* 833 F.Supp. 1000, 1007 (S.D.N.Y.1993), and the Petitioner did not present this issue as a federal issue on appeal, it is not now reviewable by the habeas court as a federal issue.

 Even if federal due process rights were implicated, the trial court's refusal to instruct on manslaughter is supported on the facts. As a matter of state law, justification and manslaughter instructions were unwarranted. For example, Oqui's grand jury testimony indicated that Hector Delgado had been carrying a bat before the shootings. Petitioner claims the bat was a weapon, and thereby implicated the theory of self-defense. Hector had dropped the bat, however, as he ran away before Petitioner shot him. New York State Criminal Procedure law does not allow a defense of justification when the defendant had such an escape route. *See* N.Y.Penal Law § 35.15(2)(a).

 New York provides a mitigation charge where defendant has met the burden of showing that he or she was under extreme emotional distress at the time he or she acted. Petitioner claims he was entitled to this instruction because he was in a "heated argument" with one of the victims. However, New York cases construing manslaughter do not support Petitioner's claim. That defense requires circumstances similar to those that exist where a "provocation" defense applies, which circumstances concern the relationship between the actors and the nature of the dispute. An argument over an abandoned refrigerator with an acquaintance does not rise to the required level. The trial court therefore acted properly. *See, e.g., New York v. White,* 79 N.Y.2d 900, 581 N.Y.S.2d 651, 590 N.E.2d 236 (1992).

### III. CONCLUSION

For the reasons stated above, Petitioner's petition for writ of habeas corpus is DISMISSED.

As the petition presents no question of substance for appellate review, a certificate of probable cause will not issue. *Rodriquez v. Scully,* 905 F.2d 24 (2d Cir.1990) (per curiam); *Alexander v. Harris,* 595 F.2d 87, 90–91 (2d Cir.1979). I certify pursuant to 28 U.S.C. § 1915(a) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**SO ORDERED.**